IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 23-6246

———————————

ANDREW FIELDS, III,

*Appellant,*

v.

FEDERAL BUREAU OF PRISONS, ET AL.,

*Appellees.*

———————————

Appeal from the United States District Court
for the Western District of Virginia
at Roanoke
*The Honorable Elizabeth K. Dillon, District Judge*

———————————

BRIEF OF THE APPELLEE FEDERAL BUREAU OF PRISONS

———————————

Christopher R. Kavanaugh          Krista Consiglio Frith
United States Attorney            Assistant United States Attorney
                                  310 First Street
                                  Roanoke, Virginia 24011
                                  (540) 857-2250


*Attorneys for the Federal Bureau of Prisons*

# Table of Contents

Page

**TABLE OF AUTHORITIES** ................................................................................ iii

STATEMENT OF JURISDICTION ........................................................................1

INTRODUCTION ...................................................................................................1

ISSUES PRESENTED.............................................................................................2

STATEMENT OF THE CASE................................................................................2

SUMMARY OF ARGUMENT ...............................................................................4

STANDARD OF REVIEW .....................................................................................6

ARGUMENT ...........................................................................................................7

I.      THERE IS NO *BIVENS* REMEDY AGAINST A FEDERAL
       AGENCY...................................................................................................7

II.     THE DISTRICT COURT CORRECTLY FOUND FIELDS DOES
       NOT HAVE A *BIVENS* REMEDY FOR HIS EXCESSIVE FORCE
       CLAIM......................................................................................................8

       A.     Fields concedes this is a new *Bivens* context because it is
            indeed a new context. ...........................................................11

       B.     There are many reasons to think Congress is better suited to
            fashion a damages remedy in this new context...................14

            1.   Fields's claim requires scrutiny of a new category of conduct
                and defendants for which Congress is better suited to
                authorize a damages action. ...........................................15

            2.   Congress has extensively legislated in prison administration
                 and prisoner litigation and has not created an individual
                capacity damages remedy. ...............................................18

3.  Extending *Bivens* to Fields's claim would have significant
    systemwide consequences, precluding a *Bivens* remedy here......19

4.  The potential impact on BOP employees' discharge of their
    duties is another reason Congress is better suited to create a
    damages remedy...........................................................................23

5.  Alternative remedial structures exist, thus precluding *Bivens*
    relief. ...........................................................................................26

CONCLUSION........................................................................................36

STATEMENT REGARDING ORAL ARGUMENT ............................................37

CERTIFICATE OF COMPLIANCE.......................................................................37

## TABLE OF AUTHORITIES

Page

**Cases**

*Alsop v. Fed. Bureau of Prisons*, No. 22-1933, 2022 WL 16734497
(3d Cir. Nov. 7, 2022) ...................................................................12

*Bell v. Wolfish*, 441 U.S. 520 (1979) .....................................................16

*Bivens v. Six Unknown Federal Agents of Federal Bureau of
Narcotics*, 403 U.S. 388 (1971) ................................................1, 9

*Bulger v. Hurwitz*, 62 F.4th 127 (4th Cir. 2023) ............................... passim

*Carlson v. Green*, 446 U.S. 14 (1980) ......................................... 9, 13, 32

*Chambers v. Herrera*, 78 F.4th 1100, 2023 WL 5211040 (9th Cir.
Aug. 15, 2023) ..............................................................................12

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001) ..............................7, 8

*Davis v. Passman*, 442 U.S. 228 (1979) ...................................................9

*Earle v. Shreves*, 990 F.3d 774 (4th Cir. 2021) ....................... 17, 20, 26

*Egbert v. Boule*, 142 S. Ct. 1793 (2022) ........................................ passim

*FDIC v. Meyer*, 510 U.S. 471 (1994) ...................................................7, 8

*Gaston v. Taylor*, 946 F.2d 340 (4th Cir. 1991) .....................................17

*Graham v. Gentry*, 413 F. App'x 660 (4th Cir. 2011) (per curiam) .......................29

*Hernandez v. Mesa*, 140 S. Ct. 735 (2020) ................................. 13, 34, 35

*Hewitt v. Helms*, 459 U.S. 460 (1983) ...................................................16

*Howard v. Fed. Bureau of Prisons*, 198 F.3d 236, 1999 WL 798883,
(4th Cir. Oct. 7, 1999) (per curiam) ................................................8

*Mays v. Smith*, 70 F.4th 198 (4th Cir. 2023) ................................... passim

*Minneci v. Pollard*, 565 U.S. 118 (2012) ...............................................32

*Moore v. Bennette*, 517 F.3d 717 (4th Cir. 2008) ..................................29

*Nellson v. Doe*, 2023 WL 3336689 (4th Cir. May 10, 2023) .............. 10, 14, 19, 27

*Oliva v. Nivar*, 973 F.3d 438 (5th Cir. 2020) ........................................32

*Patton v. Blackburn*, No. 21-5995, 2023 U.S. App. LEXIS 10715 (6th Cir. May 2, 2023) ........................................................................12

*Procunier v. Martinez*, 416 U.S. 396 (1974) ..........................................16

*Ross v. Blake*, 578 U.S. 632 (2016) ......................................................29

*Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700 (4th Cir. 2007) ......................................................................22

*Shaw v. Foreman*, 59 F.4th 121 (4th Cir. 2023) .......................................6

*Silva v. United States*, 45 F.4th 1134 (10th Cir. 2022) ..................... 12, 27

*Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30 (4th Cir. 1985) ......................................................................................22

*Tate v. Harmon*, 54 F.4th 839 (4th Cir. 2022) ............................... passim

*Turner v. Safley*, 482 U.S. 78 (1987) .....................................................16

*United States v. Akinrosotu*, 637 F.3d 165 (2d Cir. 2011) ......................20

*Watkins v. Carter*, No. 20-40234, 2021 WL 4533206 (5th Cir. Oct. 4, 2021) ......................................................................................12

*Watkins v. Martinez*, No. 20-40781, 2022 WL 278376 (5th Cir. Jan. 31, 2022) ..................................................................................12

*Williams v. Keller*, No. 21-4022, 2021 WL 448639 (10th Cir. Oct. 1, 2021) ......................................................................................32

*Ziglar v. Abbasi*, 582 U.S. 120 (2017) ..................................... 9, 14, 20, 34

**Statutes**

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1915A ......................................................................... 1, 4, 6

5 U.S.C. App. 3 § 5 ...............................................................................34

5 U.S.C. App. 3 § 8E .............................................................................33

**Other Authorities**

BOP Program Statement P5566.06 (Aug. 29, 2014), *available at* https://www.bop.gov/policy/progstat/5566_006.pdf ....................22

BOP, *About Our Agency*, https://www.bop.gov/about/agency/ (last
    visited Sept. 20, 2023) ...................................................................20

**Rules**

Fed. R. App. P. 28.........................................................................11

Fed. R. Evid. 201(b)(2) ................................................................20

**Regulations**

28 C.F.R. § 542.14(d)(1) ..............................................................30

**STATEMENT OF JURISDICTION**

This is a civil appeal of a screening review dismissal of a *Bivens* action in the United States District Court for the Western District of Virginia in Roanoke Division for failure to state a claim pursuant to 28 U.S.C. § 1915A. The district court entered its final order on January 31, 2023. JA109.[1] A timely notice of appeal was filed on March 13, 2023. JA110.

This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

**INTRODUCTION**

This is a purported *Bivens* action. Appellant-Plaintiff Andrew Fields, III filed suit against the Federal Bureau of Prisons (BOP) and twenty-five BOP employees in their individual capacities (Defendants) purportedly pursuant to *Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Fields, a former U.S. Penitentiary (USP) Lee inmate, alleged Defendants violated his First, Second, Fourth, Fifth, Fourteenth, and Eighth Amendment rights. Prior to any defendants being served, the district court screened the complaint pursuant to 28 U.S.C. § 1915A. On screening review, the district court dismissed Fields's complaint for failure to state a claim. The only issue on appeal is whether the district

---

[1] References to the Joint Appendix are designated as "JA__." References to Appellant's Brief are designated as "Brief at __." Internal citations and quotations are generally omitted unless otherwise noted.

court correctly held that Fields's novel Eighth Amendment claim for excessive force by BOP employees did not state a cognizable *Bivens* claim. This Court should affirm the district court because the BOP as an agency cannot be sued under *Bivens*, and because *Egbert v. Boule*, 142 S. Ct. 1793 (2022) forecloses  extension any *Bivens* suit for excessive force against the individual BOP employees because there are numerous reasons Congress is better suited to determine if a damages action should proceed for such alleged misconduct and thus no judicially implied cause of action should be created.

## ISSUES PRESENTED

1. Whether the district court correctly dismissed Fields's purported *Bivens* claim against the Federal Bureau of Prisons because such claims cannot be brought against a federal agency.

2. Whether the district court correctly held there is no *Bivens* remedy for a federal inmate's Eighth Amendment claims alleging excessive force by federal employees.

## STATEMENT OF THE CASE

Fields sued the Federal Bureau of Prisons (BOP), the Warden of U.S. Penitentiary Lee (USP Lee), and more than two dozen other USP Lee employees in their individual capacities alleging violations of his constitutional rights during his incarceration at USP Lee. JA007. Fields's Complaint raised various purported

constitutional violations, including interference with his ability to file grievances, tampering with his legal mail, denial of medical treatment, excessive force, and retaliation. JA008. Only Fields's excessive force claim is at issue in this appeal. Brief at 4 n.2.

Fields alleges that on November 9, 2021, after failing to have his required "inmate movement pass," he was placed in handcuffs, escorted to the Special Housing Unit (SHU), and punched, stomped, and kicked by a BOP officer until he "semi-fell unconscious." JA013. Fields claims he was then placed in a pro-stryker restraint chair, placed in the SHU observation cell, and "pushed roughly and shoved face first [and] rammed into the wall." JA013–14. Shortly thereafter, while in ambulatory restraints, Fields alleges more BOP staff rushed into the cell, "ramming [his] face into the wall at sudden impact causing his nose and teeth to bang into the wall knocking [his] front tooth loose," while also punching him in the face. JA015. Fields further alleges various BOP staff members continued to punch, kick, and ram him with a shield during two-hour restraint checks over the course of twenty-four hours until he was released from the ambulatory restraints. JA015–24.

On unspecified dates, Fields also claims his unit supervisors did not "allow plaintiff the opportunity to retrieve grievance forms or administrative remedies." JA026. He simultaneously alleged, however, that the warden, associate warden, and captain were all "placed on notice before and after the claims in plaintiff's

3

complaint ha[d] arise[n] [of] all thee [sic] above mentioned USP-Lee staff hereins [sic] conduct via verbal complaints, *administrative remedies*, staff after incident reports and memorandums." *Id.* (emphasis added).

Prior to any of the defendants being served[2], the district court screened the complaint under 28 U.S.C. § 1915A(a). JA095. The district court dismissed Fields's complaint in its entirety for failure to state a claim. JA096. With respect to Fields's excessive force claim, the district court held that it was foreclosed under *Egbert* because it arose in a new context, and "Congress is better suited to make the determination of whether [a damages remedy here] is appropriate and desirable."[3] JA103–104, 107. This appeal followed.

## SUMMARY OF ARGUMENT

*Egbert* forecloses Fields's purported *Bivens* claim. Although Congress frequently legislates the management of prisons and the treatment of incarcerated persons, it has never provided a cause of action for federal prisoners to sue BOP employees in their individual capacities. The Supreme Court created an implied

---

[2] Because none of the defendants—including the individual defendants—were served with a summons and the complaint, none were made aware of the complaint. Thus, none of the individual defendants sought representation by the Department of Justice. As a result, undersigned counsel *only* represents the BOP in this appeal.

[3] The district court dismissed the case in its entirety, but did not engage in any analysis as to why the BOP could not be a defendant to a *Bivens* suit.

cause of action against federal employees in their individual capacities in three cases involving alleged violations of the Fourth, Fifth, and Eighth Amendments, but never in the context presented in this case. And in the past 42 years, the Supreme Court has never again created an implied cause of action under the Constitution against federal employees. Instead, the Supreme Court held in *Egbert* that it has "come to appreciate more fully the tension between judicially created causes of action and the Constitution's separation of legislative and judicial power." *Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022).[4] As a result, the Supreme Court held that a cause of action against federal employees should only be created by the judiciary when there is *no* reason that Congress would be better suited than the courts to legislate in this area. *Id.* at 1805. The Court admonished that "[w]hen asked to imply a *Bivens* action, [the] watchword is caution." *Id.* at 1803. "[I]n all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts . . . ." *Id.* at 1800.

Fields is asking this Court to do precisely what *Egbert* cautions against: imply a new cause of action in a new context. Fields seeks to minimize the extension by arguing that he "only asks this Court to recognize an exceedingly narrow extension that will uncommonly arise: an Eighth Amendment excessive force claim where the Bureau of Prisons' (BOP) administrative remedy program is not operational." Brief

---

[4] Internal quotation marks and citations omitted throughout unless otherwise noted.

at 5. The extension he seeks, however, is not narrow, and regardless does not succeed under the requisite *Egbert* analysis, which this Court has applied four times to reject other extensions of *Bivens*.

This Court faces one overarching question in deciding whether to create an implied cause of action in this case: "whether there is *any* rational reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 142 S. Ct. at 1805. There are several rational reasons Congress is better suited here. Accordingly, this Court should hold, as it has in its other post-*Egbert* decisions, that Fields's requested extension of *Bivens* fails.

Moreover, with respect to Fields's claims against BOP as an agency, those claims fail because the agency cannot be a defendant to a purported *Bivens* claim. This Court should thus affirm the judgment below.

**STANDARD OF REVIEW**

The Court reviews *de novo* a district court's dismissal for failure to state a claim under 28 U.S.C. § 1915A. *Shaw v. Foreman*, 59 F.4th 121, 126 (4th Cir. 2023). The facts from the pro se complaint are accepted as true for purposes of the appeal and are construed "liberally" by this Court. *Id.* at 127.

# ARGUMENT

## I. THERE IS NO *BIVENS* REMEDY AGAINST A FEDERAL AGENCY.

Fields named the BOP as a defendant in addition to twenty-five BOP employees. His complaint does not state a separate cause of action against the BOP, and he thus sued the BOP purportedly for constitutional violations under *Bivens*. The BOP—a federal agency—cannot be subject to a *Bivens* claim. Fields's opening brief does not address this issue, but the Supreme Court has expressly "declined an invitation to extend *Bivens* to permit suit against a federal agency." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001).[5]

The Supreme Court first considered the issue of whether to extend *Bivens* to federal agencies in *FDIC v. Meyer*, 510 U.S. 471, 484 (1994). First, the Court noted the sought-after extension was "significant" and found such an extension contradicted the very basis for the creation of a *Bivens* remedy. *Id*. The Court explained, "[W]e implied a cause of action against federal officials in *Bivens* in part *because* a direct action against the Government was not available." *Id.* at 485. Such an extension of *Bivens* would gut the *Bivens* remedy, and "the deterrent effects of the *Bivens* remedy would be lost." *Id.* Second, the Court found "there are special

---

[5] Further, sovereign immunity precludes suit against the United States and its agencies absent a congressional waiver of sovereign immunity. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).

factors counseling hesitation." *Id.* at 486. Namely, allowing a *Bivens* cause of action against federal agencies "would be creating a potentially enormous financial burden for the Federal Government." *Id.* Because "decisions involving federal fiscal policy are not [the Court's] to make," the Court "le[ft] it to Congress to weigh the implications of such a significant expansion of Government liability." *Id.*

Since *Meyers*, the Supreme Court and the Fourth Circuit have considered whether to expand *Bivens* liability to federal agencies and have declined to do so. *See Corr. Servs. Corp.*, 534 U.S. at 69; *Howard v. Fed. Bureau of Prisons*, 198 F.3d 236, 1999 WL 798883, at *2 (4th Cir. Oct. 7, 1999) (per curiam). Fields presents no reason for this Court to depart from Supreme Court precedent, and this Court should affirm the dismissal of Fields's complaint against the BOP.

## II.   THE DISTRICT COURT CORRECTLY FOUND FIELDS DOES NOT HAVE A *BIVENS* REMEDY FOR HIS EXCESSIVE FORCE CLAIM.

Fields alleges he suffered violations of his Eighth Amendment right against cruel and unusual punishment because he was allegedly punched, slammed, and kicked by BOP staff. Pursuant to the Supreme Court's decision in *Egbert* and the Fourth Circuit's decisions in *Tate*, *Mays*, and *Bulger* there is no such cognizable cause of action for Fields's claims. *See Egbert v. Boule*, 142 S. Ct. 1793, 1803–04, 1807–09 (2022); *Tate v. Harmon*, 54 F.4th 839, 848 (4th Cir. 2022); *Mays v. Smith*, 70 F.4th 198, 202 (4th Cir. 2023); *Bulger v. Hurwitz*, 62 F.4th 127, 140 (4th Cir. 2023).

In *Bivens*, the plaintiff sued Federal Bureau of Narcotics agents in their individual capacities. Bivens alleged the defendants manacled him in front of his family, threatened to arrest his entire family, searched his apartment without a search warrant, and arrested him for alleged narcotics violations without a warrant or probable cause. 403 U.S. 388, 389 (1971). The Supreme Court found, under general principles of federal jurisdiction, an implied cause of action for damages in the Fourth Amendment for the alleged constitutional violations. *Id.* at 390–98.

Since 1971, the Supreme Court has found an implied cause of action against federal employees in only two other cases. In *Davis v. Passman*, 442 U.S. 228 (1979), the Court allowed "[a] claim against a Congressman for firing his female secretary," and in *Carlson v. Green*, 446 U.S. 14 (1980), the Court created a remedy for "a claim against prison officials for failure to treat an inmate's asthma." *Ziglar v. Abbasi*, 582 U.S. 120, 140 (2017).

"In the more than four decades since, however, the Supreme Court has consistently rebuffed every request—12 of them now—to find implied causes of action against federal officials for money damages under the Constitution." *Mays*, 70 F.4th at 202; *see also Egbert*, 142 S. Ct. at 1799. Indeed, in the past six years, the Supreme Court has "handed down a trilogy of opinions not only expressing regret over its *Bivens* cases but also demonstrating hostility to *any* expansion of them." *Tate*, 54 F.4th at 843 (emphasis added). "The Court has made clear that expanding

9

the *Bivens* remedy to a new context is an extraordinary act that will be unavailable in most every case." *Mays*, 70 F.4th at 202.

Although the Supreme Court did not overrule *Bivens* in *Egbert*, it imposed a "highly restrictive" analysis for determining whether an implied cause of action exists for allegations different than those in *Bivens*, *Davis*, and *Carlson*. *Tate*, 54 F.4th at 844; *Mays*, 70 F.4th at 202.

First, the Court must consider whether the instant case presents a "new context," i.e. did it "differ in a meaningful way" from *Bivens*, *Davis*, and *Carlson*. *Abassi*, 582 U.S. at 139. Second, if the claim "do[es] not fall precisely under *Bivens*, *Davis*, or *Carlson*," the court must consider whether "special factors counsel[ ] hesitation" in extending a *Bivens* remedy, "center[ing] on separation-of-powers principles," and principally the overarching question of whether Congress is better suited to legislate a cause of action than the courts. *Tate*, 54 F.4th at 844; *see also Abassi*, 582 U.S. at 133–34; *Egbert*, 142 S. Ct. at 1803; *Mays*, 70 F.4th at 202.

Since *Egbert*, the Fourth Circuit has four times considered the availability of a damages remedy against federal prison officials in their individual capacities for purported constitutional violations. All four times, the Fourth Circuit has declined a remedy. *See Mays*, 70 F.4th at 207 (declining to extend *Bivens* for alleged Fifth Amendment procedural due process and equal protection violations); *Nellson v. Doe*, 2023 WL 3336689, at *6 (4th Cir. May 10, 2023) (unpublished) (declining to extend

*Bivens* to alleged deliberate indifference to medical needs where a BOP inmate was not provided an assistive device and unable to walk without assistance); *Bulger*, 62 F.4th at 142 (declining a cause of action for alleged failure to protect from inmate-on-inmate violence); *Tate*, 54 F.4th at 846 (rejecting request to extend *Bivens* to claims of "degenerate" conditions of confinement in violation of the Eighth Amendment).

Here, Fields concedes his claim arises in a new context. *See* Brief at 11 (recognizing Fields is seeking an "extension of *Bivens*"); Fed. R. App. P. 28(a)(8)(A). Thus, the only question before this Court is whether there are *any*— even one—reasons that Congress is better suited to create a damages remedy. *Egbert*, 142 S. Ct. at 1818; *Mays*, 70 F.4th at 205. As this Court has held four times post-*Egbert*, there are multiple reasons the Court should not extend a *Bivens* remedy to the federal prison context, even where the administrative remedy process is purportedly frustrated by prison staff.

**A.    Fields concedes this is a new *Bivens* context because it is indeed a new context.**

Fields repeatedly argues he seeks an "extension" of *Bivens* in this case, thus recognizing his claims present a new *Bivens* context. *See, e.g.*, Brief at 5 ("Fields only asks this Court to recognize an exceedingly narrow *extension* . . . ." (emphasis added)). Absent from his brief is any examination of whether his case differs in a meaningful way from the Supreme Court's three prior *Bivens* cases, despite

acknowledging *Egbert* retained a two-prong analysis. Because the entire premise of Fields's argument is that he seeks an extension of *Bivens* here, he concedes that his claim arises in a new context.

This concession comports with all circuits that have considered the issue of whether prisoner excessive force claims present a new context post-*Egbert*. *See Silva v. United States*, 45 F.4th 1134, 1137 (10th Cir. 2022) (declining to extend a *Bivens* remedy to inmate's excessive force claim and noting that BOP's administrative remedy program alone counselled against a remedy); *Chambers v. Herrera*, 78 F.4th 1100, 2023 WL 5211040, at *6–7 (9th Cir. Aug. 15, 2023) (holding same for inmate's excessive force claims arising from being sprayed in the face with mace and repeatedly assaulted by a prison guard several times); *Patton v. Blackburn*, No. 21-5995, 2023 U.S. App. LEXIS 10715, at *7 (6th Cir. May 2, 2023) (holding same for claims against prison guards who slammed a prisoner to the floor and bent his wrist back while in four-point restraints); *Alsop v. Fed. Bureau of Prisons*, No. 22-1933, 2022 WL 16734497, at *3 (3d Cir. Nov. 7, 2022) (holding excessive force claims "are not a basis for relief under *Bivens*"); *Watkins v. Martinez*, No. 20-40781, 2022 WL 278376, at *1 (5th Cir. Jan. 31, 2022) (same); *Watkins v. Carter*, No. 20-40234, 2021 WL 4533206, at *2 (5th Cir. Oct. 4, 2021) (holding same for claims arising from BOP inmate being tackled and kicked to the ground to force him into a shared cell).

Further, an analysis of the facts here compared to those in *Bivens*, *Davis*, and *Carlson* demonstrates Fields presents a new context. A court must have a "broad" understanding of what constitutes a "new context." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Id.* Moreover, "a new context may arise if *even one* distinguishing fact has the potential to implicate separation-of-powers considerations." *Tate*, 54 F.4th at 846.

Here, Fields cannot argue his claim is akin to *Bivens* or *Davis*, neither of which involved a prisoner or an Eighth Amendment violation. Although *Carlson* involved a prisoner's claim of an Eighth Amendment violation, it did not involve excessive force as Fields alleges here. *Carlson* involved allegations the defendants were aware of "gross inadequacy[ies]" in the prison's medical facility, which led to a significant delay in medical care, administering of contra-indicated drugs, and use of damaged medical equipment, culminating in the prisoner's death. *Carlson*, 446 U.S. at 16 n.1. Fields's allegations do not involve the provision or denial of medical care. Instead, Fields's claims involve allegations of BOP employees punching, kicking, and shoving him. These allegations are meaningfully different from those presented in *Carlson* because one involves medical functions while the other pertains to use of force against an inmate, thus implicating vastly different issues and concerns as

discussed further below in the special factors analysis. Thus, as the Tenth, Ninth, Sixth, Third, and Fifth Circuits have all held, allegations of excessive force by BOP staff arise in a new *Bivens* context.

**B.   There are many reasons to think Congress is better suited to fashion a damages remedy in this new context.**

When a purported *Bivens* claim arises in a new context—such as here—the Court must consider whether "there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022). As the Supreme Court noted, "[b]ecause recognizing a *Bivens* cause of action is an extraordinary act that places great stress on the separation of powers," courts "have a concomitant responsibility to evaluate any grounds that counsel against *Bivens* relief." *Id.* at 1806 n.3. Separation-of-powers principles must be central to the "special factors" analysis in implying a cause of action under the Constitution itself, and "courts much show 'utmost deference' to Congress so as not to 'arrogate legislative power.'" *Tate*, 54 F.4th at 848 (quoting *Egbert*, 142 S. Ct. at 1803); *Egbert*, 142 S. Ct. at 1805–06; *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017); *Mays*, 70 F.4th at 203; *Nellson*, 2023 WL 3336689, at *3; *Bulger*, 62 F.4th at 137.

The Supreme Court advised courts against inquiring "whether *Bivens* relief is appropriate in light of the balance of circumstances in the particular case" due to the inevitable impairment of governmental interests and frustration of Congress's

policymaking role that would result from applying the special factors analysis at a "narrow level of generality." *Egbert*, 142 S. Ct. at 1805. "Rather, under the proper approach, a court must ask 'more broadly' if there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate.'" *Id.* (quoting *United States v. Stanley*, 483 U.S. 669, 681 (1987)). "[I]f there is even the *potential* for such consequences," as *Egbert* instructs, "a court cannot afford a plaintiff a *Bivens* remedy." *Id.*

Here, Congress is better positioned to create a damages remedy here for several reasons: the new context Fields's claim presents; Congress's extensive legislation in prison administration and prison litigation; the significant systemwide consequences; the potential impact on BOP employees' discharge of their duties; and the numerous alternative remedial structures. Just *one* reason precludes relief for Fields. Thus, for any one of these reasons, this Court should not extend a *Bivens* remedy to Fields's claims of excessive force within BOP.

> **1.     Fields's claim requires scrutiny of a new category of conduct and defendants for which Congress is better suited to authorize a damages action.**

First, Fields's claims "would require scrutiny of new categories of conduct and a new category of defendants," namely BOP employees involved in inmate discipline. *Mays*, 70 F.4th at 205. This alone is a special factor that this Court has

weighed against extending a *Bivens* remedy in *Mays* and *Bulger*. *Id.*; *Bulger*, 62 F.4th at 140.

Congress is better suited to create a damages action in the field of prison administration. The Supreme Court has long recognized that "federal courts have adopted a broad hands-off attitude toward problems of prison administration," *Procunier v. Martinez*, 416 U.S. 396, 404 (1974), because "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner v. Safley*, 482 U.S. 78, 84–85 (1987); *see also Hewitt v. Helms*, 459 U.S. 460, 467 (1983) ("[P]rison officials have broad administrative and discretionary authority over the institutions they manage . . . . [and] administration of a prison is at best an extraordinarily difficult undertaking . . . ."); *Bell v. Wolfish*, 441 U.S. 520, 548 (1979) ("[P]rison administrators may be 'experts' only by Act of Congress . . . . But judicial deference is accorded not merely because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his domain than the reviewing judge, but also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial."). Most recently in *Bulger* and *Mays*, this Court recognized the "statutory scheme delegating authority over prison . . . decisions to the BOP." *Bulger*, 62 F.4th at 140; *Mays*, 70

F.4th at 205. Congress has delegated prison administration—including prison discipline—to BOP, making it a matter that is "rarely [the] proper subject[] for judicial intervention" and counseling against a judicially-created cause of action. *Egbert*, 142 S. Ct. at 1805.

This "hands-off" role of the judiciary in deference to Congress is especially appropriate in the federal prison context where matters of inmate and staff safety are at issue. General "functions of prison management [ ] must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991); *see also Tate*, 54 F.4th at 848 ("Moreover, providing a damages remedy for such inadequacies would involve not only decisions of acceptable human needs but also judgments regarding prison staffing levels, economic considerations, and the most efficient procedures for addressing the inadequacies."). Functions of inmate discipline are particularly ill-suited to judicial intrusion. As this Court explained, "the recognition of a *Bivens* remedy in this case would work a significant intrusion into an area of prison management that demands quick response and flexibility, and it could expose prison officials to an influx of manufactured claims." *Earle v. Shreves*, 990 F.3d 774, 781 (4th Cir. 2021). The reasoning holds true here where issues of prisoner discipline demand quick responses, flexibility, and vary greatly across situations.

Therefore, this new category of conduct and new category of defendants is an area best left to Congress, and the Court should not imply a cause of action here.

> **2.** **Congress has extensively legislated in prison administration and prisoner litigation and has not created an individual capacity damages remedy.**

Another reason Congress is better suited to create a remedy here (not discussed by Fields) is that prison administration and litigation is an area in which Congress has extensively legislated and has chosen not to create a *Bivens* remedy against BOP officials. The Supreme Court observed of the PLRA—passed 15 years after *Carlson*—that Congress "clear[ly] . . . had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs," but "the Act itself does not provide for a standalone damages remedy against federal jailers," which could "suggest[] Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Ziglar v. Abbasi*, 582 U.S. 120, 148–49 (2017). As *Egbert* teaches, courts are "[n]ow . . . [to] defer to 'congressional inaction' if 'the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms.'" *Egbert*, 142 S. Ct. at 1808 (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988)).

This Court has followed the Supreme Court's holdings, explaining Congress's extensive legislation and silence in creating an individual-capacity damages remedy for federal inmates "speaks volumes and strongly counsels against judicial

usurpation of the legislative function." *Mays*, 70 F.4th at 206; *see also Bulger v. Hurwitz*, 62 F.4th 127, 141 (4th Cir. 2023) ("[B]ecause Congress has expressed a desire to prevent courts from interfering with BOP decisions and has been conspicuously silent about creating a remedy for prisoners to obtain damages from individual officers, the existence of the [Administrative Remedy Program] and PLRA counsel hesitation in extending *Bivens* . . . ."); *Nellson v. Doe*, No. 21-6206, 2023 WL 3336689, at *5 (4th Cir. May 10, 2023) ("Congress's decision not to include an individual-capacity damages remedy in the Prison Litigation Reform Act speaks volumes and counsels strongly against judicial usurpation of the legislative function."). The Court should again do so here.

### 3. Extending *Bivens* to Fields's claim would have significant systemwide consequences, precluding a *Bivens* remedy here.

A third reason Congress is better positioned to create a damages remedy here is the Court's inability to "predict the systemwide consequences of recognizing a cause of action under *Bivens* and that uncertainty alone is a special factor that forecloses relief." *Tate*, 54 F.4th at 848. Fields recognizes this yet argues—without citation to any authority—that it is "clear . . . that the potential for systemwide consequences must rise far above the level of rank speculation." Brief at 13. His argument contradicts the case law and fails to appreciate that the precise difficulty in predicting systemwide consequences is the special factor foreclosing relief.

On a systemwide level, the creation of a new *Bivens* remedy for federal prisoner excessive force claims will open up BOP officers to significant potential liability for the BOP's decisions about how to discipline inmates and when and under what circumstances it is appropriate to restrain them. *See Mays v. Smith*, 70 F.4th 198, 206 (4th Cir. 2023). The BOP is presently responsible for the custody and care of 158,265 federal inmates and has 34,547 employees. *See* BOP, *About Our Agency*, https://www.bop.gov/about/agency/ (last visited Sept. 20, 2023).[6] *Any* inmate who is subject to a use of force could survive a motion to dismiss an individual-capacity damages claim by merely alleging that the force was more than necessary. "Given the ease with which an inmate could manufacture [such] a claim," *Earle*, 990 F.3d at 780, permitting a *Bivens* action premised on such an allegation would have unpredictable "systemwide consequences." *Egbert*, 142 S. Ct. at 1803. It could result in "a significant expansion of Government liability, [which] counsels against permitting *Bivens* relief." *Id.* at 1808. Such claims would create heightened system-wide costs for federal prison employees sued personally and in-turn the federal government itself. *Ziglar v. Abbasi*, 582 U.S. 120, 137 (2017). Moreover, expanding BOP employees to such personal liability, particularly with claims that could be

---

[6] Information on government websites and not subject to reasonable disputes is appropriate for judicial notice. *See* Fed. R. Evid. 201(b)(2); s*ee, e.g.*, *United States v. Akinrosotu*, 637 F.3d 165, 168 (2d Cir. 2011) (taking judicial notice of the official BOP website).

easily manufactured, could have a chilling effect on BOP hiring and make employee retention difficult. This could lead to severely understaffed prisons, causing danger not only for BOP staff and inmates, but also for society at large. Other systemwide consequences are difficult to predict for a federal agency that employs tens of thousands of individuals and has five-fold number of inmates. *Tate*, 54 F.4th at 848. "That uncertainty alone is a special factor that forecloses relief" in this case and demonstrates why Congress is better suited to create a damages remedy here. *Egbert*, 142 S. Ct. at 1804.

Fields argues this case does not implicate systemwide consequences as it does in *Bulger* because it involves "the use of excessive force by a rogue, front-line officer in a particular instance" will "rarely implicate systemic or managerial concerns." Brief at 14. But Fields greatly oversimplifies the realities and implications of his claims.

First, Fields not only sues "front-line" officers, but he also sues the warden, assistant warden, a captain, a nurse, and several lieutenants. JA007. Not all these individuals are "front-line" officers. And some of the individuals he names as defendants are not even alleged to physically have touched him—like the warden— so his claim is far broader than he portrays in his brief.

Second, Fields's complaint demonstrates the greater context in which his allegations purportedly occurred. Incident reports attached to Fields's complaint

demonstrate the reality of his allegations is likely not as simple as "rogue" officers assaulting him for no reason. The attachments describe one incident in which Fields attempted to assault a BOP employee and another incident where he punched his cellmate in the back of the head then continued to punch his cellmate on the ground. JA027–28.[7] Thus, if the purported excessive force was in response to these incidents, prison policy and administration will certainly be implicated.

Further, his claim will call into question prison policies on use of special equipment, such as shields (which Fields claims were rammed against him) and certain restraints (Fields claims a belly chain was improperly placed to hurt him), and individuals motivations in taking such actions. BOP policies on the use of force against inmates in certain situations implicating inmate and staff safety will also be at issue.[8] While Fields asserts his claims are ones of "rogue" employees, situations arise where the use of force is necessary to gain control of an inmate who has placed himself, BOP staff, and other inmates in physical danger. Fields's claim will create a slippery slope of purported excessive force claims any time an inmate thinks BOP

---

[7] Attachments to the complaint may be considered part of the complaint at the motion to dismiss stage. *See Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 32 (4th Cir. 1985).

[8] *See* BOP Program Statement P5566.06 (Aug. 29, 2014), *available at* https://www.bop.gov/policy/progstat/5566_006.pdf.

staff has treated him unfairly, not only causing judicial intrusion into an area Congress delegated to BOP—the correctional experts—but will also lead to a far greater extension than the "exceedingly narrow," Brief at 5, one he offers the Court here.

### 4. The potential impact on BOP employees' discharge of their duties is another reason Congress is better suited to create a damages remedy.

Similar to the significant and unpredictable systemwide consequences, the potential impact on the discharge of BOP employees' duties is another reason Congress is better suited to create a damages remedy here. Fields's claim would create an entirely new category of personal liability for BOP employees for a category of conduct that could be far reaching, causing a chilling effect on the discharge of BOP employees' duties.

As discussed above regarding systemwide consequences, excessive force claims can be easily manufactured, particularly any time an inmate is subject to discipline. For example, any time an inmate needs to be placed in restraints— whether due to discipline or ordinary movement of inmates within the prison—an inmate could allege the BOP employee put the restraints on too tightly for the purpose of causing the inmate physical pain. So long as the inmate makes detailed enough allegations to get past Rule 8 requirements, BOP employees will be subject to extensive discovery obligations and litigation. Further, events arise in prisons that

require the use of force by BOP staff on an inmate, like when an inmate physically assaults other inmates or BOP staff. If a BOP employee could be sued personally for a perceived or manufactured use of excessive force, BOP staffs' necessary actions could be chilled by the fear of his conduct being called "excessive" by the inmate. In life threatening situations calling for quick action and the use of force, the delay, hesitation, or failure to use necessary amounts of force can result in catastrophic, life threatening consequences for BOP staff and inmates. Like in *Egbert*, recognizing a *Bivens* remedy for Fields's claims "pose[s] an acute risk" of increasing "substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *Egbert*, 142 S. Ct. at 1807.

Fields argues that the impact on the discharge of officials' duties consideration "only applies when the claim would apply to an extraordinarily broad range of conduct . . . that will almost certainly be litigated past the pleading stage and through discovery or a trial," which he asserts "is a far cry from the situation here." Brief at 19. As discussed above, if a *Bivens* remedy is extended here, it will be hard to draw a line in other purported excessive force cases where either the use of force was not as the inmate describes or was necessary, but so long as the inmate meets the Rule 8 pleading requirements, it will open BOP employees up to wide ranging discovery

and costly litigation. Therefore, Fields's claim does apply to "an extraordinary broad range of conduct."

Fields also asserts that the discharge of duties is only implicated for those of "'high-ranking officials' decisions on how to implement systemwide policies," which Fields does not believe is present here. Brief at 19–20. But again, Fields fails to appreciate the far-reaching implications expanding *Bivens* liability to this type of claim could have and takes a simplistic view of prison administration. Fields sued *twenty-five* USP Lee employees, including high ranking employees within USP Lee such as the warden. And his claims do reach systemwide policies as discussed above.

Further, Fields's argument that the Supreme Court and Fourth Circuit have not applied the "discharge of duties" special factor in excessive force cases such as his does not mean that it is inapplicable here. Although its use in *Ziglar* and *Egbert* is not the same here because Fields is not directly challenging a BOP policy and suing national level BOP administrators, his claims nonetheless are likely to implicate BOP policies as discussed above. Further, Fields sues high level USP Lee employees, such as the warden, but does not allege they directly used excessive force against him. Thus, naming these defendants is no different than Tate's inclusion of the Regional Director of BOP, and this Court's application of the discharge of duties special factor in *Tate*.

In sum, creating this new, potentially far-reaching category of personal liability for BOP employees could have a significant effect on BOP employees' discharge of their duties that often require quick action, leading to systemic consequences, including significant safety concerns, across BOP. As such, this is yet another reason Congress is better positioned to create a damages remedy for prisoner excessive force claims.

### 5. Alternative remedial structures exist, thus precluding *Bivens* relief.

Although there are ample special factors demonstrating Congress is better suited to create a damages remedy here—and only one is required to decline extending a *Bivens* remedy—there is an additional dispositive reason to not extend a *Bivens* remedy to Fields's claim: Congress's creation of alternative remedial measures. *Egbert*, 142 S. Ct. at 1804. For Fields's claim, there are several alternative remedial structures available, most notably BOP's administrative remedy process, thus precluding *Bivens* relief for yet another reason.

### i. BOP's Administrative Remedy Program Precludes Relief.

As the Fourth Circuit noted, "[l]ike all federal inmates, [Fields] has 'full access to remedial mechanisms established by the BOP, including suits in federal court for injunctive relief and grievances filed through the BOP's Administrative Remedy Program.'" *Earle v. Shreves*, 990 F.3d 774, 780 (4th Cir. 2021); *see also Mays*, 70 F.4th at 205 ("Inmates . . . have an 'alternative remedial structure' that

allows them to seek equitable relief for issues related to confinement, discipline, and the like."); *Bulger v. Hurwitz*, 62 F.4th 127, 140 (4th Cir. 2023) (finding the BOP administrative remedy process was an alternative remedy precluding expansion of *Bivens*); *Nellson v. Doe*, No. 21-6206, 2023 WL 3336689, at *5 (4th Cir. May 10, 2023) ("[T]he existence of an alternative remedial structure for prisoners, even if it is not as effective as a suit for damages, weighs heavily against recognizing a new *Bivens* cause of action."); *see also Silva v. United States*, 45 F.4th 1134, 1141 (10th Cir. 2022) ("[W]e find the availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose Plaintiff's *Bivens* claim."). Thus, alternative remedial structures preclude extending a *Bivens* remedy here. *Egbert*, 142 S. Ct. at 1804.

Fields argues that because the administrative remedy program was not made available to him due to "rogue officers" that "nullified a remedial program, . . . the operation of the program will no longer represent the will of Congress or the Executive." Brief at 21. Fields claims "personnel refused to provide Fields with access to the necessary forms" to file a grievance pursuant to the administrative remedy program, and it was thus unavailable to him. *Id.* at 3. But his argument fails for two separate reasons.

First, courts have found that the unavailability of the administrative remedy program is irrelevant to the analysis because the analysis is based on Congress's

intention and separation of powers principles. As this Court explained in *Bulger*, the consideration is merely on the *existence* of a remedial scheme, not on its availability to any particular plaintiff. *Bulger*, 62 F.4th at 141. "The potential unavailability of a remedy in a particular circumstance does not warrant supplementing that scheme." *Id.* Fields argues the Court should ignore its explanation in *Bulger* because there, the Court "was referring to a scheme that was in effect and operational." Brief at 24. But Field's argument takes *Bulger* too far. The *Bulger* court did not consider facts or allegations as to the availability or unavailability of the administrative remedy process in the particular case. Instead, it was focused on the broader existence of the remedial scheme as instructed by *Egbert*, not on the specific existence of the remedial scheme as it applied to that inmate. Thus, applying the same analysis here, the broad existence of the remedial scheme mandates declining to extend a *Bivens* remedy.

Second, Fields's premise that the administrative remedy program was unavailable is faulty because Fields's complaint does not allege the complete "br[eak] down" touted by his Brief. Fields argues the Court should follow the PLRA's exhaustion exception to his proposed extension of the *Bivens* remedy, Brief, at 21–22, but he cannot meet that burden, even if it were applicable.

Under the PLRA, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing

himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). The Supreme Court has explained that an administrative remedy is considered unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016). Where an inmate admits his failure to exhaust, such as here, he bears the burden of proof to show, by a preponderance of the evidence, that administrative remedies were unavailable. *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011) (per curiam).

Here, Fields asserts in his opening brief that the grievance process was thwarted by "rogue" BOP employees. Brief at 21. But Fields's complaint does not make that same allegation, let alone an allegation that he was thwarted through "machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644. Instead, the complaint alleges, on unspecified dates, his unit supervisors did not "allow plaintiff the opportunity to retrieve grievance forms or administrative remedies." JA026. Fields's bare assertion without any specificity that he was not "allow[ed] . . . the opportunity to retrieve grievance forms," *id.*, does not allege, let alone show by a preponderance of the evidence, that Fields's administrative remedies were thwarted by machination, misrepresentation, or intimidation. Moreover, this

allegation is contradicted by another allegation in his complaint that he *did* inform the warden, associate warden, and captain of the allegations in the complaint through "administrative remedies." *Id.* Thus, based on his own complaint, while his unit supervisors allegedly may have not provided him administrative remedy forms on some occasion, Fields nonetheless asserts he filed administrative remedies regarding the allegations in his complaint. Fields claims two specific officers interfered with his ability to file administrative remedies, but he also admits he was successfully able to communicate his concerns to the warden and others at USP Lee. Fields's complaint does not allege a systemic breakdown of the administrative remedy process, much less meet the burden of proof to establish administrative remedies were unavailable to him.

Further, even if he did not file administrative remedies and was thwarted by machination, misrepresentation, or intimidation, Fields's complaint ignores a crucial component of the administrative remedy process: the availability of sensitive remedies. The BOP regulations permit inmates who reasonably believe their safety would be placed in danger if an administrative remedy became known at the institution, to bypass the warden and submit a "sensitive" request directly with the appropriate Regional Director. 28 C.F.R. § 542.14(d)(1). Fields does not allege that he filed a sensitive remedy, further demonstrating his administrative remedies were available and he merely chose not to use them (if he indeed failed to exhaust his

administrative remedies). Therefore, Fields's assertion that he did not have "full access" to the administrative remedy program is not supported by the record.

Last, Fields asserts that unavailable administrative remedies will "uncommonly arise." Brief at 5. But this bare assertion is devoid from reality. Inmates commonly argue their administrative remedies have been thwarted to get around the exhaustion requirement of the PLRA. Although BOP staff rarely and hopefully never in fact thwart such efforts, prisoners commonly make the allegation in litigation. Thus, the proposed *Bivens* extension would incentivize inmates to skip the administrative remedy process and allege in their complaints that their efforts to utilize the administrative remedy process have been thwarted, thus providing them with a *Bivens* remedy. It would allow inmates to make it past the screening stages, burden BOP employees with responding to complaints where inmates did not even attempt to exhaust administrative remedies, and open BOP employees to discovery.

In sum, BOP's extensive administrative remedy program, which Fields has not alleged was unavailable to him, precludes extending a *Bivens* remedy here, just as it did in *Tate*, *Bulger*, and *Mays*.

### ii. Additional alternative remedial processes further preclude relief.

Further, Fields has additional alternative remedial processes to a *Bivens* remedy, such as the Federal Tort Claims Act (FTCA).[9] Fields argues the FTCA is irrelevant here pursuant to *Carlson v. Greene*, 446 U.S. 14 (1980). Brief at 25. But his argument ignores the forty years of case law since *Carlson*.

In *Carlson*, the Supreme Court recognized "FTCA and *Bivens* [to be] parallel, complementary causes of action." 446 U.S. at 20. In *Egbert*, however, the Court clarified that such reasoning "carries little weight because it predates [the Court's] current approach to implied causes of action." 142 S. Ct. at 1808. Thus, while the outcome and holding of *Carlson* remains, *Egbert* points out that its reasoning is no longer controlling. In line with *Egbert*, two circuit courts have found that the FTCA serves as an alternative remedy that counsels against recognizing a *Bivens* claim. *See Williams v. Keller*, No. 21-4022, 2021 WL 4486392, at *4 (10th Cir. Oct. 1, 2021); *Oliva v. Nivar*, 973 F.3d 438, 444 (5th Cir. 2020).

In addition to the FTCA, Congress has already provided a process to address allegations of misconduct by Department of Justice employees and thereby deter

---

[9]  State tort law also provides an alternative means of relief. The Supreme Court recognized this in a suit brought by a federal inmate seeking redress for alleged inadequate medical care. *See Minneci v. Pollard*, 565 U.S. 118, 127–30 (2012) (recognizing availability of remedy of state tort law and that "[s]tate-law remedies and a potential *Bivens* remedy need not be perfectly congruent").

such misconduct. Through the Inspector General Act of 1978, as amended, Congress instructed the Attorney General to ensure that "any component" of the Department that receives a "nonfrivolous allegation of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice . . . shall report that information to the Inspector General." 5 U.S.C. App. 3 § 8E(d). Congress in turn authorized the Department's Inspector General as appropriate to "investigate allegations of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice," "refer such allegations to the Office of Professional Responsibility," or refer them to "the internal affairs office of the appropriate component" of the Department. *Id.* § 8E(b)(2).

In legislating, Congress placed no limitations on who may report allegations of wrongdoing. *See generally id.* Accordingly, any person, including Fields, may report such alleged misconduct. Indeed, the Department's Office of the Inspector General (OIG) provides a link on its public website to report allegations of wrongdoing. *See* oig.justice.gov/hotline. Upon receiving such allegations, OIG generally either opens its own investigation or, as appropriate, refers the allegations to the Office of Professional Responsibility or the internal affairs office of the relevant Department component. Any findings by OIG regarding allegations of misconduct are then provided to the appropriate component for any remedial or disciplinary steps.

Additionally, the Inspector General Act requires that Inspectors General—including that of the Department of Justice—prepare semiannual reports that are transmitted to Congress and that describe "significant problems, abuses, and deficiencies" related to the administration of the Department's "programs and operations." 5 U.S.C. App. 3 § 5(a)(1); *id.* § 5(b). The Act also requires that those reports contain "matters referred to prosecutive authorities and the prosecutions and convictions which have resulted." *Id.* § 5(a)(4). Through such provisions, Congress has already taken steps to be notified regarding substantiated misconduct at the Department, enabling it to conduct its own inquiries should it so choose, and to enact any laws or provide any remedies it deems fit to address misconduct by Department employees.

The existence of a congressionally authorized investigatory process, as implemented by the Executive Branch, is yet another alternative counseling against this Court implying a damages remedy, which Fields does not address. *See Egbert*, 142 S. Ct. at 1807 (holding that if "Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy"); *see also Ziglar v. Abbasi*, 582 U.S. 120, 144 (2017) (acknowledging that DOJ OIG investigation into the area at issue counseled against *Bivens* remedy); *Hernandez v. Mesa*, 140 S. Ct. 735, 744 (2020) (discussing DOJ's prosecution determination).

\*　　\*　　\*　　\*

Before minting a new *Bivens* remedy, judges must "consider the risk of interfering with the authority of the other branches" by "ask[ing] whether there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy, and whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Hernandez*, 140 S. Ct. at 743. As the Fourth Circuit held in *Tate*, "[t]he political branches are indeed 'better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy.'" *Tate v. Harmon*, 54 F.4th 839, 848 (4th Cir. 2022) (quoting *Egbert*, 142 S. Ct. at 1804).

"[C]reating a cause of action is a legislative endeavor," and one this Court should not undertake given the field and context that give rise to Fields's claims. *Egbert*, 142 S. Ct. at 1802. "Even a single sound reason to defer to Congress is enough to require a court to refrain from creating such a remedy." *Id.* at 1803. This Court has several sound reasons to defer to Congress and should therefore not create a judicially implied cause of action here.

## CONCLUSION

For the foregoing reasons, Appellee BOP respectfully requests the Court affirm the district court.[10]

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
United States Attorney

*/s/ Krista Consiglio Frith*
Krista Consiglio Frith
Assistant United States Attorney
Virginia State Bar No. 89088
Western District of Virginia
P. O. Box 1709
Roanoke, VA 24008-1709
Tel: (540) 857-2250
Fax: (540) 857-2283
Email: krista.frith@usdoj.gov

---

[10] BOP also notes that although there are ample reasons to affirm the district court's decision, if the Court were to remand the case, and the defendants were served and answered, there are additional dispositive defenses that would be raised at the motion to dismiss stage, including failure to exhaust and qualified immunity.

## STATEMENT REGARDING ORAL ARGUMENT

The Bureau of Prisons respectfully suggests that oral argument is not necessary in this case. The legal issues are not novel, and oral argument likely would not aid the Court in reaching its decision.

## CERTIFICATE OF COMPLIANCE

I certify that this brief was written using 14-point Times New Roman typeface and Microsoft Word 2016.

I further certify that this brief does not exceed 13,000 words (and is specifically 8,409 words) as counted by Microsoft Word, excluding the table of contents, table of authorities, statement regarding oral argument, this certificate, the certificate of service, and any addendum.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.

/s/ *Krista Consiglio Frith*
Krista Consiglio Frith
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2023, I electronically filed the foregoing Response Brief of Appellee Federal Bureau of Prisons with the Clerk of the Court using the CM/ECF System, which will send notice, and constitute service, of such filing to the following registered CM/ECF user(s):  all counsel of record for the Appellant.


/s/ *Krista Consiglio Frith*
Krista Consiglio Frith
Assistant United States Attorney