No. 23-6246

# IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

ANDREW FIELDS, III,

Plaintiff-Appellant,

v.

FEDERAL BUREAU OF PRISONS ET AL.,

Defendants-Appellees.

On Appeal from the United States District Court
for the Western District of Virginia

# BRIEF FOR THE UNITED STATES AS AMICUS CURIAE IN SUPPORT OF REHEARING EN BANC

BRIAN M. BOYNTON
   *Principal Deputy Assistant Attorney General*

CHRISTOPHER R. KAVANAUGH
   *United States Attorney*

BARBARA L. HERWIG
JENNIFER L. UTRECHT
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7710*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 353-9039*

## TABLE OF CONTENTS

**Page**

STATEMENT OF INTEREST AND SUMMARY OF ARGUMENT ....................... 1

STATEMENT OF THE CASE ................................................................................ 3

ARGUMENT ............................................................................................................ 4

I.    Supreme Court Precedent Strongly Disfavors the Recognition of New *Bivens* Remedies ............................................................................................ 4

II.    Separation-of-Powers Concerns Prohibit the Judicial Creation of a Damages Remedy in the New Context of Plaintiff's Claim ................................. 6

CONCLUSION ....................................................................................................... 11

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                                                                       Page(s)

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
   403 U.S. 388 (1971) ............................................................................... 1, 4

*Bulger v. Horowitz*,
   62 F.4th 127 (4th Cir. 2023) ............................................................. 3, 6, 7, 8

*Carlson v. Green*,
   446 U.S. 14 (1980) ....................................................................................... 4

*Chambers v. Herrera*,
   78 F.4th 1100 (9th Cir. 2023) ...................................................................... 1, 6

*Correctional Servs. Corp. v. Malesko*,
   534 U.S. 61 (2001) ....................................................................................... 7

*Davis v. Passman*
   442 U.S. 228 (1979) ..................................................................................... 4

*Egbert v. Boule*,
   596 U.S. 482 (2022) .............................................................. 1, 2, 3, 5, 6, 7, 8, 9, 10

*Farrington v. Diah*,
   2023 WL 7220003 (11th Cir. Nov. 2, 2023) ............................................. 1, 7

*Harper v. Nedd*,
   71 F.4th 1181 (9th Cir. 2023) ......................................................................... 9

*Hernandez v. Mesa*,
   589 U.S. 93 (2020) ................................................................................ 4-5, 9

*Johnson v. Terry*,
   112 F.4th 995 (11th Cir. 2024) ................................................................ 2, 8

*Landis v. Moyer*,
   2024 WL 937070 (3d Cir. Mar. 5, 2024) ................................................... 1, 7

*Mays v. Smith*,
   70 F.4th 198 (4th Cir. 2023) ............................................................... 3, 6, 9, 10

*Patton v. Blackburn*,
   2023 WL 7183139 (6th Cir. May 2, 2023) ............................................. 1, 6

*Sargeant v. Barfield*,
   87 F.4th 358 (7th Cir. 2023) ............................................................................. 8

*Silva v. United States*,
   45 F.4th 1134 (10th Cir. 2022) ..................................................................... 1, 7

*Tate v. Harmon*,
   54 F.4th 839 (4th Cir. 2022) ........................................................................... 5

*Turner v. Safley*,
   482 U.S. 78 (1987) ..................................................................................... 9, 10

*Ziglar v. Abbasi*,
   582 U.S. 120 (2017) ........................................................................... 2, 4, 6, 7, 8

**Statute:**

28 U.S.C. § 1915A(a) ............................................................................................ 3

**Regulation:**

28 C.F.R. § 542.14(d)(1) ....................................................................................... 8

## STATEMENT OF INTEREST AND SUMMARY OF ARGUMENT

The petition for rehearing raises questions of exceptional importance about the constitutional separation of powers and the appropriate role of the judiciary in creating new causes of action under the Constitution. Over Judge Richardson's forceful dissent, a panel of this Court recognized a new damages remedy under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for a prisoner's Eighth Amendment excessive force claim. To our knowledge, this is the first court of appeals decision to extend *Bivens* to a new context since the Supreme Court decided *Egbert v. Boule*, 596 U.S. 482 (2022). Five circuits have specifically refused to extend *Bivens* to prisoner excessive force claims.[1]

The individual defendants affected by this ruling—Federal Bureau of Prisons (BOP) employees on whom process has never been served and who therefore were not represented by counsel before the panel—have filed a rehearing petition through private counsel. The United States submits this amicus brief in support of their petition because the panel's ruling is irreconcilable with Supreme Court and Circuit precedent and threatens significant harm to the government and its employees.

---

[1] *See Landis v. Moyer*, 2024 WL 937070 (3d Cir. Mar. 5, 2024); *Chambers v. Herrera*, 78 F.4th 1100, 1108 (9th Cir. 2023); *Farrington v. Diah*, 2023 WL 7220003 (11th Cir. Nov. 2, 2023) (per curiam); *Patton v. Blackburn*, 2023 WL 7183139, at *3 (6th Cir. May 2, 2023) (per curiam); *Silva v. United States*, 45 F.4th 1134, 1141 (10th Cir. 2022).

For multiple reasons, the panel should not have authorized a new damages remedy here. As the Supreme Court made clear in *Egbert*, courts may not recognize a damages remedy Congress has not expressly created if there is "*any* rational reason (even one) to think" that Congress "might doubt the efficacy or necessity of a damages remedy" against individual officers and employees of the government. 596 U.S. at 496, 501. *Egbert* expressly cautioned that, "in most every case," it will be Congress's prerogative, not the courts', to authorize damages. *Id.* at 492. And here, Congress has legislated extensively regarding prisoner claims without creating a freestanding damages remedy against prison officials, and BOP affords administrative options to root out malfeasance. Moreover, the newly augmented risk of personal-capacity damages—including the threat of litigation on claims that will ultimately prove to be insubstantial or even frivolous—could deter prison officials at the numerous federal institutions within this Circuit from "taking urgent and lawful action" to carry out their important and challenging duties. *Ziglar v. Abbasi*, 582 U.S. 120, 145 (2017). These factors strongly suggest that Congress may have concluded that an individual-capacity damages action is not appropriate or desirable; at minimum, courts are not better equipped to weigh the relevant policy considerations.

The majority's recognition of a judicially crafted damages remedy has already been recognized as a "far-afield outlier" among the circuits. *Johnson v. Terry*, -- F.4th --, 2024 WL 4379803, at *7 (11th Cir. Oct. 3, 2024). The majority's reasoning also drastically departs from recent decisions of this Court holding that separation-of-

powers concerns—including the existence of the BOP's Administrative Remedy Program—prohibit extending *Bivens* to prisoner claims that arise in a new context. *E.g.*, *Bulger v. Hurwitz*, 62 F.4th 127, 141-42 (4th Cir. 2023); *Mays v. Smith*, 70 F.4th 198, 205-06 (4th Cir. 2023). The majority sought to distinguish those cases by emphasizing plaintiff's allegations that prison officials prevented him from retrieving grievance forms. But as the Supreme Court has admonished, the potential inadequacy or unavailability of a remedial scheme in a particular case cannot justify the judicial creation of a new damages remedy in a given field. *See Egbert*, 596 U.S. at 497-98. Consideration by the full Court is necessary to ensure proper deference to Congress' legislative role and maintain uniformity of this Court's decisions.

## STATEMENT OF THE CASE

This case arises from the prescreening dismissal of plaintiff's complaint under 28 U.S.C. § 1915A(a). Plaintiff alleges that prison officials at U.S. Penitentiary Lee attacked him while transporting him to the special housing unit and continued to assault him at regular intervals while checking his ambulatory restraints. JA13, 17-24, 29. Prison staff also allegedly denied plaintiff access to the forms necessary to file a grievance through BOP's Administrative Remedy Program. JA24, 26.

The district court dismissed plaintiff's complaint, finding that many of the complaint's allegations failed to state a constitutional violation and the remainder were not cognizable because "there is no damages remedy under *Bivens* for those claims." JA96. A divided panel of this Court affirmed in part and reversed in part. The panel

3

affirmed the dismissal of plaintiff's excessive force claim against BOP and supervisory prison officials who were not alleged to be personally involved. The panel reversed the dismissal of plaintiff's excessive force claim as to the individual officers that plaintiff alleged personally subjected him to excessive force. Judge Richardson dissented from the decision to extend *Bivens* to plaintiff's claim.

## ARGUMENT

### I. Supreme Court Precedent Strongly Disfavors the Recognition of New *Bivens* Remedies

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, the Supreme Court held, despite the absence of a statutory cause of action, that a person claiming to be the victim of an unlawful arrest and search could sue the law-enforcement officials responsible for money damages in their individual capacities. 403 U.S. 388, 389 (1971). The Court subsequently recognized "what has come to be called an implied cause of action" against federal officials "in two cases involving other constitutional violations." *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017). It approved a damages remedy for a Fifth Amendment due process claim involving gender discrimination by a Congressman in *Davis v. Passman*, 442 U.S. 228 (1979), and an Eighth Amendment claim for failure to provide vital medical care to a federal inmate during a severe asthma attack in *Carlson v. Green*, 446 U.S. 14 (1980).

In the decades following *Carlson*, however, the Supreme Court has "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez v. Mesa*, 589

4

U.S. 93, 102 (2020). And in the last several years, the Court "has handed down a trilogy of opinions not only expressing regret over its *Bivens* cases but also demonstrating hostility to any expansion of them." *Tate v. Harmon*, 54 F.4th 839, 843 (4th Cir. 2022). Most recently, the Court explained that creating a cause of action is fundamentally a "legislative endeavor" that requires weighing policy considerations that courts are generally not equipped to consider on a systemwide level. *Egbert v. Boule*, 596 U.S. 482, 491 (2022). The Court expressed skepticism that courts have *any* authority to recognize causes of action not expressly created by Congress, and opined that, if it were "called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution." *Id.* at 502.

Under the Court's modern approach, courts must avoid "arrogat[ing] legislative power," and provide "utmost deference to Congress' preeminent authority" to define causes of action. *Egbert*, 596 U.S. at 492. If a plaintiff's claim differs meaningfully from those recognized in *Bivens*, *Davis*, or *Carlson*, a court may not imply a damages remedy if there is "*any* rational reason (even one) to think" that Congress "might doubt the efficacy or necessity of a damages remedy" against individual government employees. *Id.* at 496, 501. The Supreme Court has made clear that courts "should not inquire" whether damages are appropriate "in light of the balance of circumstances in the 'particular case.'" *Id.* at 496. Rather, the question is whether there is "any reason to think that 'judicial intrusion' into a given field might be

5

'harmful' or 'inappropriate.'" *Id.* "[E]ven if there is the '*potential*' for such consequences, a court cannot afford a plaintiff a *Bivens* remedy." *Id.*

## II.  Separation-of-Powers Concerns Prohibit the Judicial Creation of a Damages Remedy in the New Context of Plaintiff's Claim

Plaintiff concedes that his Eighth Amendment excessive force claim arises in a new context. The question is therefore whether there is any reason to think "the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492. The majority seriously erred in concluding that there was not.

As the majority acknowledged, Congress has repeatedly legislated on prisoner litigation and prison administration. Most notably, in the Prison Litigation Reform Act (PLRA), Congress authorized BOP to establish grievance procedures to resolve prisoner complaints without creating a standalone damages action. The Supreme Court has recognized that specific omission as a special factor counseling against the extension of *Bivens*, interpreting it as evidence that Congress "chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Abbasi*, 582 U.S. at 149; *see also Bulger v. Hurwitz*, 62 F.4th 127, 141 (4th Cir. 2023) (holding that the PLRA's lack of a standalone damages remedy "speaks volumes and counsels strongly against usurpation of the legislative function"); *Mays v. Smith*, 70 F.4th 198, 205-06 (4th Cir. 2023); *Chambers v. Herrera*, 78 F.4th 1100, 1106-08 (9th Cir. 2023); *Patton v. Blackburn*, 2023 WL 7183139, at *3 (6th Cir. May 2, 2023) (per curiam).

6

In holding to the contrary, the majority stated that nothing in the PLRA affirmatively prohibits courts from extending the damages remedy recognized in *Carlson* to a new Eighth Amendment context. Op. 19-20. But when asked whether a court should recognize a damages remedy not expressly authorized by Congress, the question is not whether Congress has explicitly forbidden courts from doing so. Rather, the question is whether Congress's failure to provide for a damages remedy provides any "reason to pause" before extending *Bivens*. *Egbert*, 596 U.S. at 492; *see also* Op. 25-26 (Richardson, J., dissenting). The Supreme Court's precedents establish that it does. *Abbasi*, 582 U.S. at 148-49.

The majority's analysis also cannot be reconciled with the Supreme Court's admonition that "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Egbert*, 596 U.S. at 493. Courts—including this one—have correctly recognized the existence of BOP's Administrative Remedy Program as an independently sufficient ground to foreclose the extension of *Bivens* to a new context. *See, e.g.*, *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (identifying this alternative remedial scheme as a special factor); *Bulger*, 62 F.4th at 140-41; *Silva v. United States*, 45 F.4th 1134, 1141 (10th Cir. 2022); *Farrington v. Diah*, 2023 WL 7220003, at *2 (11th Cir. Nov. 2, 2023) (per curiam); *Landis v. Moyer*, 2024 WL 937070, at *3 (3d Cir. Mar. 5, 2024).

7

The majority sought to distinguish these cases by emphasizing allegations that prison officials prevented plaintiff from retrieving grievance forms. But the court's role is to respect—not to supplement—the remedial processes that Congress and the Executive Branch created. "So long as Congress or the Executive has created a remedial process that it finds sufficient," "the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 596 U.S. at 498. Thus, as this Court recognized in *Bulger*, the potential inadequacy or unavailability of an alternative remedial scheme in the particular circumstances of a plaintiff's case cannot justify the judicial creation of a new damages remedy in a given field. *Bulger*, 62 F.4th at 140-41. Rather, it is the *existence* of the remedial program—not its availability in a particular case—that prohibits the recognition of an implied, freestanding damages remedy. *Id.*; *see also Abbasi*, 582 U.S. at 137; *Johnson v. Terry*, --- F.4th ---, 2024 WL 4379803, at *15 (11th Cir. Oct. 3, 2024) ("Because the Court has told us that the ultimate question is whether Congress or the Executive created an alternative remedy, we can't look at the adequacy or efficacy of the alternative remedy in general or in relation to a specific plaintiff."); *Sargeant v. Barfield*, 87 F.4th 358, 368-69 (7th Cir. 2023); *Harper v. Nedd*, 71 F.4th 1181, 1188 (9th Cir. 2023).[2]

---

[2] Inmates who reasonably believe their safety would be threatened if an administrative remedy became known may also bypass the warden and submit a sensitive request directly with the appropriate Regional Director. 28 C.F.R. § 542.14(d)(1).

8

The majority also inappropriately downplayed the systemic consequences that its *Bivens* extension threatens. "Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner v. Safley*, 482 U.S. 78, 84-85 (1987). Although the majority attempted to confine its holding to allegations of "rogue" conduct by a few officers who violated BOP policy, Op. 14-17, that is "the wrong level of specificity," *Mays*, 70 F.4th at 206. The question whether to extend *Bivens* to a new context does not depend on a court's assessment of the egregiousness or infrequency of the misconduct alleged in a particular case. *Egbert*, 596 U.S. at 496. "A court inevitably will 'impai[r]' governmental interests, and thereby frustrate Congress's policymaking role, if it applies the 'special factors analysis' at such a narrow 'leve[l] of generality.'" *Id.* (alterations in original).

Instead, the question is whether the "Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492. "[I]n most every case," the answer is that "Congress is 'far more competent than the Judiciary' to weigh" the relevant policy considerations. *Id.* at 491, 492. That is particularly true where, as here, the plaintiff's claim arises in a field that is ordinarily "committed to the responsibility of [the political] branches." *Turner*, 482 U.S. at 85; *see also Hernandez*, 589 U.S. at 104 (explaining that courts should hesitate to extend *Bivens* in such areas); *Mays*, 70 F.4th

9

at 206 (holding that courts are "plainly" not competent to weigh the systemwide consequences of authorizing damages against prison officials).

Finally, the Supreme Court has warned of the "substantial social costs" of expanding the *Bivens* remedy, including that "[f]ederal employees 'face[d with] the added risk of personal liability for decisions that they believe to be a correct response to improper [activity] [may] be deterred from' carrying out their duties." *Egbert*, 596 U.S. at 499 (final set of brackets added). Those concerns are particularly stark in the prison context, where officials must regularly make urgent decisions about the use of force to ensure prison security and prisoner safety. The panel's mistaken analysis subjects federal employees to the "added risk of personal liability for decisions that they believe to be a correct" and lawful response to emergent situations, *id.*, at least so long as a prisoner augments his claim with vague allegations that he was denied access to administrative remedies, *see* Op. 32 (Richardson, J., dissenting). The majority speculated that this would not have a substantial chilling effect on officers because many prisoner cases will be dismissed before officers are served. Op. 15. But the fact remains that officers at the numerous federal institutions within this Circuit are now threatened with the cost and anxiety of litigation for a new category of claims, even if the claims will ultimately prove "insubstantial" or "frivolous." *Egbert*, 596 U.S. at 498-500. The "uncertainty" about the systemwide consequences of this threatened liability "alone" is sufficient to foreclose a *Bivens* remedy, *id.* at 493, and the panel's erroneous analysis should be corrected.

10

## CONCLUSION

For the foregoing reasons, this Court should grant the petition for rehearing en banc.

Respectfully submitted,

BRIAN M. BOYNTON
   *Principal Deputy Assistant Attorney General*

CHRISTOPHER R. KAVANAUGH
   *United States Attorney*

BARBARA L. HERWIG

*s/ Jennifer L. Utrecht*
JENNIFER L. UTRECHT
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7710*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 353-9039*
   *Jennifer.l.utrecht@usdoj.gov*

October 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 29(b)(4) because it contains 2,579 words. This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 29(a)(4) and 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

                                    *s/ Jennifer L. Utrecht*
                                    Jennifer L. Utrecht

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.

*s/ Jennifer L. Utrecht*
Jennifer L. Utrecht